IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GILBERTO HERNANDEZ,<br>      Plaintiff, | §<br>§<br>§ | |
| v. | § | Civil Action No. 3:14-CV-0022-BK |
| | § | |
| DALLAS INDEPENDENT SCHOOL<br>DISTRICT, *et al.*,<br>      Defendants. | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the parties' consent, this case was transferred to the undersigned for determination.  Now before the Court is Defendants' *First Motion to Dismiss,* Doc. 23.  For the reasons that follow, the motion is **GRANTED IN PART.**

### I.   BACKGROUND

This *pro se* action stems from the nonrenewal of Plaintiff's employment contract with Defendant Dallas Independent School District ("DISD").  Plaintiff was an educator for 17 years, and was employed by DISD as a bilingual teacher at Gilbert Cuellar Sr. Elementary School ("Cuellar") beginning in at least 2011.[1]  Doc. 15 at 3, 25.  Plaintiff asserts that, in October of the 2011–2012 academic year, he reported his concerns to the Texas Education Agency ("TEA") about the lack of compliance with mandatory instruction of bilingual students by certified bilingual teachers at Cuellar.  Doc. 15 at 31.  Plaintiff further alleges that, when the 2012–2013 academic year began, Defendant John Donnelly, then the principal at Cuellar, denied him an ELMO system and an In-Focus projector that "all Math & Science teachers in 5th grade were getting."  Doc. 15 at 3.  Plaintiff avers that he was treated differently because of his age and gender since the "other younger females in the 5th grade level" received the new equipment.

---

[1]  Plaintiff does not actually state the length of his employment with DISD or at Cuellar Elementary.  2011 is the earliest of his factual allegations.  Doc. 15 at 25.

Doc. 15 at 3. Plaintiff alleges that Defendant Cynthia Garza, Cuellar's assistant principal, also discriminated against him by failing to purchase and provide the bilingual textbooks that Plaintiff required for his students. Doc. 15 at 4.

Plaintiff states that he made additional complaints on specified dates in 2013 to a number of authorities, including Child Protective Services, the DISD Office of Professional Responsibility ("OPR"), and the TEA, about Cuellar's non-compliance with DISD policies and other alleged misconduct by individual faculty members — namely Defendants Garza, Donnelly, and Dr. Sheryl Wilson. Doc. 15 at 6–7. As a result of his "whistleblower complaints," Plaintiff alleges he was retaliated against by Garza on April 16, 2013, when she conducted Plaintiff's annual evaluative appraisal, giving him failing scores in "3 out of 8" criteria. Doc. 15 at 10. After contesting his appraisal, Plaintiff filed a formal grievance against Garza with DISD Human Resources on April 30, 2013. Doc. 15 at 54–55. Plaintiff clarified in a second formal grievance submitted on May 1, 2013, that Donnelly should have conducted Plaintiff's appraisal and that Garza abruptly conducted the appraisal herself to retaliate against Plaintiff. Doc. 15 at 46–47.

Plaintiff avers that the retaliation continued into the 2013–2014 school year when Wilson became the new principal at Cuellar. Doc. 15 at 12. Plaintiff alleges that Wilson retaliated against him by placing him on a "growth plan" and by reassigning him to teach first grade bilingual and math classes (instead of fifth grade science) without obtaining his consent or providing him with training or materials. Doc. 15 at 13. Plaintiff insists that Wilson's retaliation created a racially-hostile work environment because she asked Plaintiff to "teach [her] how to speak Spanish," and she performed excessive "spot observations" of Plaintiff's teaching — more than were required by DISD policy. Doc. 15 at 14.

Plaintiff asserts that, when he reported the harassing nature of the spot observations to DISD, Wilson issued him a letter of reprimand on January 15, 2014, for providing "false facts" to the District. Doc. 15 at 111. Since he did not provide false facts about the spot observations, Plaintiff argues this constitutes fraud and fraudulent misrepresentation by Wilson. Doc. 15 at 18–20. Plaintiff generally alleges that Defendant Jacqueline Lovelace, a former DISD executive director, through a "conspiracy of silence," allowed Garza and Wilson to retaliate against Plaintiff until Lovelace was removed from her position in April 2014. Doc. 15 at 21–24.

On April 15, 2014, Plaintiff received advanced notice of the DISD Superintendent's intent to recommend nonrenewal of Plaintiff's employment contract after the 2013–2014 academic year. Doc. 15 at 19, 66–67. Plaintiff contends that the nonrenewal notice, the formal reprimand from Wilson, and the negative annual appraisal in his employment file, taken together, constitute defamation of Plaintiff's reputation that has "a natural tendency to injure" Plaintiff's occupation as a bilingual teacher. Doc. 15 at 21.

Proceeding without the assistance of counsel, Plaintiff brought this civil action on January 3, 2014, and amended his complaint on January 17, 2014. Doc. 3; Doc. 6. Defendants moved for a more definite statement on January 21, 2014, Doc. 9, which the Court granted on April 11, 2014, Doc. 14. Plaintiff filed his *2nd Amended Complaint in Response to Defendants' Motion for a More Definite Statement* on April 25, 2014. Doc. 15.

Liberally construed, Plaintiff's second amended complaint enumerates several causes of action: (1) discrimination on the basis of his race and his gender in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981,[2] Doc. 15 at 3–5, 14–15; (2) discrimination on the

---

[2] Discrimination claims brought pursuant to Section 1981 are governed by the "same evidentiary framework applicable to employment discrimination claims under Title VII." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 n.7 (5th Cir. 2004); *see also Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 992 (5th Cir. 2005) (noting that the Title VII and Section 1981 analyses are

basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), Doc. 15 at 3, 5, 7; (3) unlawful retaliation under the Texas Whistleblower Act, Doc. 15 at 5–7, 11–14; (4) deprivation of his constitutional rights to due process and equal protection under 42 U.S.C. § 1983, Doc. 15 at 24; and (5) defamatory libel and slander causing injury to his reputation, Doc. 15 at 21.  Plaintiff also alleges fraudulent misrepresentation and fraud against Wilson.  Doc. 15 at 18–21.

In the motion *sub judice*, Defendants seek dismissal of Plaintiff's claims under Rule 12(b)(6) for failure to state a claim , including all of Plaintiff's federal causes of action and his retaliation claim under the Texas Whistleblower Act.  Doc. 23 at 7–17.  Defendants also move for dismissal of the remaining state law tort claims, contending that the DISD and the individual Defendants are entitled to sovereign immunity under the Texas Tort Claims Act.  *See* Doc. 23 at 15-16.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  To overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)

---

identical, the only substantive differences being their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies).  Accordingly, the Court considers Plaintiff's Title VII and Section 1981 claims together.

(quotation omitted).  Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

### III.  DISCUSSION

Even after two amendments, Plaintiff's complaint fails to state legally cognizable claims — and instead is replete with rumors and grievances about management decisions, parental relations, and injuries suffered by persons other than Plaintiff.  Under the Court's most liberal construction, Plaintiff has failed to allege any viable cause of action against Defendants.  Accordingly, as set forth below, Defendant's motion to dismiss is **GRANTED**.  Plaintiff be given the opportunity to amend one claim, while the remainder are **DISMISSED WITH PREJUDICE**.

**A.  Discrimination Claims**

Defendants argue Plaintiff has not alleged facts that describe a hostile work environment or any purported acts of discrimination under Title VII.  Doc. 23 at 8.  As to the ADEA, Defendants contend that Plaintiff has failed to state that the adverse employment action taken against him was because of his age, and that the Defendant would not have taken the adverse employment action but for the Plaintiff's age.  Doc. 23 at 7.

   **1.  *Disparate Treatment***

Title VII makes it unlawful to "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a claim of disparate treatment resulting in unlawful termination from employment, a plaintiff must show that (1) he belongs to a protected class; (2) he was qualified to do his job; (3) despite his qualifications, his employment situation was adversely affected; and (4) his position was filled by someone outside the protected class. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Fortenberry v. Texas*, 75 F. App'x 924, 927 (5th Cir. 2003) (similar *pro se* action). When the employer does not plan to replace the discharged plaintiff, the fourth element is that "after [the] discharge, others who were not members of the protected class remained in similar positions." *Bauer v. Abermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999) (citing *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990)).

Plaintiff's complaint makes liberal use of the words "discrimination," "retaliation," and "harassment," but mostly in a conclusory manner. *E.g*., Doc. 15 at 23–24. The substance of Plaintiff's disparate treatment allegations are as follows: (1) new digital projectors were given to younger female teachers and not to Plaintiff, despite assurances to the contrary by Donnelly, Doc. 15 at 3; (2) textbooks were given to younger African-American teachers and not to Plaintiff, Doc. 15 at 4; and (3) in several instances, Plaintiff was the only teacher on the receiving end of reprimands or spot observations, Doc. 15 at 23. Even if true, none of these incidents amounts to an adverse employment action for purposes of Title VII or Section 1981. *See Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) (noting that adverse employment actions include only ultimate employment decisions such as hiring, granting leave,

discharging, promoting, or compensating).  Moreover, Plaintiff's complaint is devoid of any connection between the nonrenewal of his employment contract and any of the aforementioned allegations of disparate treatment.  Rather, Plaintiff entirely attributes the nonrenewal to his repeated filing of "whistleblower complaints."  Doc. 15 at 5, 7, 11–14.  Thus, having failed to allege an adverse employment action, Plaintiff has failed to state a claim for race- or gender-based disparate treatment.

### *2. Hostile Work Environment*

A plaintiff may establish a Title VII violation based on discrimination that creates a hostile work environment by proving: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on that protected class; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).  For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.* (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).  In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

Plaintiff's only allegation of a hostile work environment based on his gender is Wilson remarking that his classroom "looks like a man's room."  Doc. 15 at 68.  Plaintiff's only

allegation of a hostile work environment based on his race is a remark made by Wilson to "teach [her] how to speak Spanish." Doc. 15 at 14. These remarks fail as a matter of law to show that sex or race discrimination unreasonably interfered with Plaintiff's work performance. *See Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (opining that "discriminatory verbal intimidation, ridicule, and insults" are sufficiently severe or pervasive when routinely made). Plaintiff attaches a lengthy log of spot observations alleging that Wilson harassed through verbal and nonverbal conduct, but, with the exception of Wilson's "man's room" comment, none of the entries connects any harassment to his race or gender. Doc. 15 at 68–73. Rather, Plaintiff largely takes issue with the procedures followed by Cuellar leadership, which is not properly redressed under Title VII.[3] *See White v. Gov't Emps. Ins. Co.*, 457 F. App'x 374, 380 (5th Cir. 2012) (finding that "most of the incidents" alleged by the plaintiff indicated strife between the plaintiff and her supervisors and co-workers, but were not evidence of discriminatory harassment because they could not be properly characterized as race-based); *Sprouse-Hudson v. Donahoe*, No. 11-CV-0470, 2012 WL 5359774 at *8 (N.D. Tex. 2012) (McBryde, J.) (noting that "not every situation involving strife constitutes gender-based harassment."). Thus, Plaintiff's allegations do not describe conduct that is sufficiently severe or pervasive to be actionable under Title VII. Accordingly, Plaintiff has failed to state a claim for hostile work environment.

### 3. *Age Discrimination*

The ADEA involves a different causation inquiry than Title VII discrimination claims. Under the ADEA, a plaintiff must prove that age was the "but for" cause of the challenged adverse employment action. *Reed v. Neopost USA, Inc.*, 701 F.3d 434 (5th Cir. 2012). In pleading sufficient facts to establish a claim for age discrimination, a plaintiff may offer remarks

---

[3] Plaintiff also makes numerous allegations regarding disparate treatment of his bilingual students, but this conduct is likewise not actionable under Title VII.

or comments that are (1) age related; (2) proximate in time to his termination; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. *Id.* at 441; *see also Laxton v. Gap*, 333 F.3d 572, 583 n.4 (5th Cir. 2003).

Plaintiff has wholly failed to allege any facts that show a discriminatory animus based on his age. His allegations that "other younger" teachers received favorable treatment over him are completely untethered to his contract nonrenewal, which is the only adverse employment action he alleges. Doc. 15 at 3–4. Younger teachers receiving equipment Plaintiff did not receive cannot, as a matter of law, be construed as an adverse employment action. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001) (finding that an employment action that does not affect job duties, compensation, or benefits is not an ultimate employment action); *see Martin v. Lennox Int'l, Inc.*, 342 F. App'x 15, 18 (5th Cir. 2009) (applying the definition of "adverse employment action" from a Title VII case to an ADEA case). Accordingly, Plaintiff's ADEA claim for age discrimination is fatally infirm.

**B. Section 1983 Claims**

Defendants argue that Plaintiff has failed to plead sufficient facts to establish municipal liability under Section 1983. Doc. 23 at 12–13. Specifically, Defendants maintain that Plaintiff has not described any violations of his federal rights or a widespread DISD policy that permits violations of federal laws or constitutional rights. Doc. 23 at 12. Defendants further assert that Plaintiff's claim fails because he has not alleged that a policymaker committed the purported discrimination or retaliation against Plaintiff. Doc. 23 at 12–13. Plaintiff responds that he "had a property right" in his written contract with DISD and that DISD failed to "honor its side." Doc. 25 at 22. According to Plaintiff, his rights to due process and equal protection were

violated because DISD failed to protect him from retaliation and failed to provide him a fair and impartial grievance process. Doc. 25 at 22–23.  Upon review of Plaintiff's second amended complaint, Doc. 15, and the applicable law, Defendants arguments clearly have merit.

Municipalities and other local government entities are "persons" within the scope of Section 1983. *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 690 (1978). However, "[i]t is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Stated differently, the unconstitutional actions of officials or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as contained in policy statements, ordinances, or regulations. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). An entity cannot be held liable under Section 1983 on a *respondeat superior* theory. *Monell*, 436 U.S. at 691, 694. The identification of a policy "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997) (citations omitted). If an unconstitutional act is performed pursuant to a custom that has not formally been approved by a policymaker, a municipality is subject to Section 1983 liability only if the custom is so widespread as to have the force of law. *Id.* at 404. Thus, to impose Section 1983 liability on a municipality, a plaintiff must show: (1) a final policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose moving force is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Final policymaking authority in an independent school district rests with the district's Board of Trustees unless such authority is delegated to an official.

*See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (citing TEX. EDUC. CODE §§ 23.01, 23.26).

Here, Plaintiff fails to state a claim for a due process or other constitutional violation under Section 1983 because his allegations are insufficient to give rise to municipal liability. Although DISD's Board of Trustees is its final policymaker, Plaintiff has not alleged facts from which it can be inferred that he was terminated due to the actions of the Board. Plaintiff also has not alleged that DISD's Board damaged him, delegated policymaking authority to Garza or Wilson (whom Plaintiff contends were responsible for his nonrenewal), or that those decisions were non-reviewable by the Board. *See Sherman v. Dallas Indep. Sch. Dist.*, No. 10-CV-1146, 2011 WL 477500 at *9 (N.D. Tex. 2011) (Ramirez, J.) (recommending dismissal of an analogous case), *adopted by* 2011 WL 477465 (Boyle, J.).

Moreover, the issue of municipal liability notwithstanding, Plaintiff has failed to identify a property interest that he was deprived of by DISD in relation to his due process allegation, Doc. 15 at 24. Under governing state law, a "teacher does not have a property interest in a contract beyond its term." TEX. EDUC. CODE § 21.204(e). Moreover, mere proof that nonrenewal might make a plaintiff less attractive to other employers does not implicate a liberty interest. *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984). A protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him, thus stigmatizing him and foreclosing him from other employment opportunities. *Id.*; *see Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972) ("where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to

11

be heard are essential."). The mere refusal to renew Plaintiff's employment contract does not rise to this standard.

## C. State Law Tort Claims (Immunity)

Defendants assert that Plaintiff's intentional tort claims of libel, slander, fraud, and fraudulent misrepresentation must be dismissed because Defendants are immune from tort liability under the Texas Tort Claims Act ("TTCA"). Doc. 23 at 15. They contend that all of the individual defendants are also shielded from liability because they are "professional employees" within the meaning of the Texas Education Code. Doc. 23 at 16.

The TTCA provides for a waiver of sovereign immunity as to school districts only where the torts involve motor vehicles. *See* TEX. CIV. PRAC. & REM. CODE § 101.051 ("Except as to motor vehicles, this chapter does not apply to a school district or to a junior college district."); *Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992) ("With the exception of torts involving motor vehicles, sovereign immunity extends to school districts."). Individual employees of a school district are also immune when acting within their scope of employment. *Jones*, 979 F.2d at 1007. "A professional school employee is not personally liable for acts done within the scope of employment, and which involve the exercise of judgment or discretion, except in circumstances where disciplining a student, the employee uses excessive force or his negligence results in bodily injury to the student." TEX. EDUC. CODE ANN. § 21.912(b); *Barr v. Bernard*, 562 S.W.2d 844, 848 (Tex. 1978). A Texas school official only loses his immunity when "the official abandons his official duties and becomes a mere intermeddler" acting outside the scope of his employment. *Jones*, 979 F.2d at 1007 (citing *Stimpson v. Plano Indep. Sch. Dist.*, 743 S.W.2d 944, 947 (Tex. App.—Dallas 1987).

Plaintiff has not alleged facts that would support the waiver of immunity or give rise to an applicable exception to immunity. DISD is immune from these claims in all respects. *Jones, 979 F.2d at 1007*. Additionally, the individual Defendants were all professional employees who exercised discretion during the relevant periods, thus entitling them to immunity. Doc. 23 at 16. Plaintiff takes issue with their various management decisions but fails to identify how these decisions or acts are <u>outside the scope of their employment with DISD</u>. *Jones*, 868 F.2d at 1007. Accordingly, Plaintiff's claims for libel, slander, fraud, and fraudulent misrepresentation should be dismissed.

Defendants argue that the individual Defendants are also immune from Plaintiff's constitutional claims on the grounds of qualified immunity. Doc. 23 at 14–15. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id*. at 232. A court may begin its assessment with either prong. *Id*. at 236. As discussed above, the facts as alleged fail to make out a violation of Plaintiff's due process rights, or any other constitutional rights. Accordingly, Plaintiff's claims against the individual Defendants are dismissed as well.

**D. Retaliation**

"A state or local governmental entity may not suspend or terminate the employment of . . . a public employee who in good faith reports a violation of law by the employing

governmental entity . . . to an appropriate law enforcement authority." TEX. GOV'T CODE § 554.002(a). To maintain a claim under the Texas Whistleblower Act, a plaintiff must show that (1) the plaintiff was a public employee, (2) the defendant was a state agency or local government, (3) the plaintiff reported in good faith a violation of law to an appropriate law enforcement agency, and (4) the plaintiff's report was the but-for cause of the adverse employment action taken by the defendant at the time it was taken. *Guillaume v. City of Greenville*, 247 S.W.3d 457, 461 (Tex. App.—Dallas 2008) (citing *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995)). A public employee may only sue the employing entity for relief under Act, not other public employees. TEX. GOV'T CODE § 554.0035.

Under the Texas Whistleblower Act, a "law" is a state or federal statute, an ordinance of a local governmental entity, or a rule adopted under a statute or ordinance. TEX. GOV'T CODE § 554.001(1). "Good faith" in this context means that (1) the employee believed the conduct reported was a violation of law and (2) that belief was reasonable in light of his or her training and experience. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002) (quoting *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)). The "appropriate law enforcement authority" for a whistleblowing complaint is one that the employee believes in good faith is authorized to (1) regulate under or enforce the law alleged to be violated or (2) investigate or prosecute violations of criminal law. TEX. GOV'T CODE § 554.002(b). Thus, the same good faith test also applies to determining whether a law enforcement authority is appropriate. *Needham*, 82 S.W.3d at 320–21.

Plaintiff specifies reporting a violation of Section 31.029 of the Texas Education Code, which provides for the purchase of instructional materials for bilingual classes. Doc. 15 at 4 (citing TEX. EDUC. CODE § 31.029). However, Plaintiff never connects this law to his many

TEA, OPR, or CPS complaints; he merely laments the fact that he was owed equipment and textbooks and was given neither. Doc. 15 at 4–5. Plaintiff also alleges retaliation resulting from his three letter complaints, only one of which includes a statutory citation — "19 TAC Chapter 89." Doc. 16 at 10-11 (citing Doc. 15 at 42-43).[4] That reference is to a large collection of rules regarding adaptations for special populations, however, and Plaintiff doesn't cite the specific provision allegedly violated.

For the foregoing reasons, the Court concludes that Plaintiff's Texas Whistleblower Act claims are also deficient; however, as stated below, the Court further concludes that limited leave to amend is warranted.

### IV. LEAVE TO AMEND

Although a court may dismiss a claim that fails to meet the pleading requirements, "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Plaintiff is proceeding without the assistance of counsel and has twice amended his complaint. Doc. 6; Doc. 15. However, because, as mentioned above, he has identified a <u>class</u> of laws he allegedly reported violation of to the a state agency, Doc. 15 at 42–43, he is granted the opportunity to amend his allegations to include the specific section of 19 TAC Ch. 89 that Defendant DISD allegedly violated, as he contends he reported to TEA.[5] *See Brown v. Texas A&M Univ.*, 804 F.2d 327, 334 (5th Cir.

---

[4] *See Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983) (court are required to look beyond a *pro se* complaint and consider other documents, such as attachments, affidavits, and amendments).

[5] A review of the so-called whistleblower complaints attached to the Second Amended Complaint reveals they were silent on the law violated and/or merely complaining of DISD actions Plaintiff deemed unprofessional or unethical decisions. E.g., Doc. 15 at 41, 46, 50-51, 54-55, 57-58, 74-77, 80-86, 89, 91, 97-98, 100-01. Since they reference no law or rule violation(s), leave to amend does not extend to those claims.

1986) ("Unless we have searched every nook and cranny of the record, like a hungry beggar searching a pantry for the last morsel of food, and have determined that 'even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would subject the present defendants to liability,'" he must be permitted to amend his claim if he can do so.).

As to Plaintiff's other causes of action, they are fatally flawed. Thus, granting leave to amend would be futile since either, (1) they fail as a matter of law or (2) Plaintiff, despite having had three opportunities to plead his best case, has still failed to state a cognizable claim. *See* Brewster v. Dretke, 587 F.3d 764, 767–68 (5th Cir. 2009) (leave to amend prior to dismissal is not required when she has already pled his "best case").

### V.  CONCLUSION

For the foregoing reasons, Defendants' First Motion to Dismiss, Doc. 23, is **GRANTED**. All of Plaintiff causes of action are **DISMISSED WITH PREJUDICE**, except his claim under the Texas Whistleblower Act that he was retaliated against because he reported to the TEA that DISD violated 19 TAC Ch. 89. Plaintiff is permitted to amend that claim, no later than December 22, 2014, to allege his report to TEA of a violation of a specific rule or law under that section, if possible. Barring a curing amendment by that deadline, such claim will likewise be **DISMISSED WITH PREJUDICE**.

**SO ORDERED** on December 17, 2014.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL OR OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE